UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TIMOTHY LUTHER OLSON,

    Plaintiff,

  v.              Case No. 24-C-1283

OFFICER JOHNSTON, et al.,

    Defendants.

---

## SCREENING ORDER

---

  Plaintiff Timothy Luther Olson, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. Dkt. No. 1. On November 25, 2024, the Court screened and dismissed the original complaint because it violated Federal Rules of Civil Procedure 8, 18, and 20. *See* Dkt. No. 10. In particular, Plaintiff's complaint attempted to raise numerous unrelated claims against numerous unrelated Defendants in the same lawsuit. *Id*. at 4. The Court directed Plaintiff to file an amended complaint that only contained related claims and defendants. *Id*. On December 16, 2024, Plaintiff filed an amended complaint. Dkt. No. 12. Plaintiff has also filed a motion to appoint counsel. Dkt. No. 13. This order screens the amended complaint and resolves the pending motion.

### ALLEGATIONS OF THE AMENDED COMPLAINT

  Plaintiff is an inmate at the Milwaukee County Jail. Dkt. No. 11. Defendants are Captain (Capt.) Sarah Moore, Correctional Officer (CO) Phillis Thomas, CO Hethington, CO Johnston, Deputy Hunter, Case Manager Jordan, Case Manager Lauren, Wisconsin Office of Lawyer Regulation (OLR) Director Francis Sullivan, and Milwaukee County. *Id*. at 1-2.

On or around May 28, 2023, Case Manager Jordan agreed to copy and send to the Court confidential legal documents and letters intended to "rid racism regarding corruption at the jail" for Plaintiff. *Id*. at 3. The next day, Case Manager Lauren brought the documents back to Plaintiff. *Id*. Plaintiff alleges that some of the documents were copied, some were not copied, some were damaged, and some were missing. *Id*. He asserts that Case Manager Jordan and Case Manager Lauren "intentionally and knowingly with purely evil intentions" failed to copy and mail the documents correctly to the Court and that he "was retaliated against for trying to reveal corruption." *Id*. at 3-4. On May 30, 2023, Capt. Moore, CO Thomas, and CO Hethington "opened and delayed" the Court's receipt of a letter Plaintiff wrote to "rid racism." *Id*. The letter was logged on May 30, 2023, but it wasn't received by the Court until June 27, 2023. *Id*.

On September 29, 2023, CO Hethington refused to take three letters that would not fit in Plaintiff's mailbox. *Id*. Plaintiff states that this too was "retaliation" for his attempts to reveal jail corruption, racism, and filing "grievances." *Id*. It is unclear when Plaintiff filed the grievances, which specific individuals he complained about in the grievances, what specific conduct he complained about in the grievances, and who was aware of the grievances. *See id*. Two of the letters were eventually sent out (presumably when there was more space in his mailbox), but one came back to Plaintiff on January 8, 2024, "undelivered" and without a post-mark stamp. *Id*. at 4-5. Plaintiff states that the letter was "opened" and "mangled." *Id*. at 5. Plaintiff alleges the failure to mail that one letter was also "retaliation" for his attempts to reveal corruption and racism at the jail. *Id*.

On November 21, 2023, CO Hethington told Plaintiff that she was "sick of [him]" and wouldn't give him ten envelopes that contained legal mail for the OLR. *Id*. CO Hethington opened and read *some* of Plaintiff's legal mail in what Plaintiff alleges was a very "odd" fashion where

2

she "spread the pages completely open." *Id*. at 5-6. Plaintiff asserts that this too was retaliation for his attempts to raise issues about corruption and racism at the jail. *Id*. at 6.

On December 22, 2023, and January 9, 2024, Capt. Moore, CO Thomas, and CO Hethington refused to send out two of Plaintiff's letters to Milwaukee County Sheriff Denita Ball (not a defendant) regarding corruption and racism at the jail. *Id*. Sheriff Ball confirmed to Plaintiff that she did not receive the letters. *Id*. Plaintiff asserts that, on April 22, 2024, CO Johnston finally agreed to copy and send a letter Plaintiff wrote regarding Brady violations by the District Attorney (DA) to Sheriff Ball and the courts. *Id*. at 7. He alleges that, on April 23, 2024, unknown jail staff transferred him to Mendota "in retaliation" for past grievances he had filed and to prevent additional letters being sent to Sheriff Ball. *Id*. Again, it is unclear when Plaintiff filed the grievances, which specific individuals he complained about in the grievances, what specific conduct he complained about in those grievances, and who was aware of the grievances. *See id*.

On May 8, 2024, Capt. Moore, CO Thomas, and CO Hethington opened an outgoing letter to the OLR, in which Plaintiff complained about misconduct by various lawyers (including the DA). *Id*. at 8. Plaintiff alleges that OLR Director Sullivan "quickly" and "coincidently" closed the OLR investigation without looking at Plaintiff's evidence. *Id*.

On May 23, 2024, June 25, 2024, July 18, 2024, July 24, 2024, and July 30, 2024, Capt. Moore, CO Thomas, CO Hethington, and Deputy Hunter opened Plaintiff's legal mail out of his presence and placed the mail on his tablet. *Id*. at 9. When the tablet showed an "error message" and Plaintiff could not read the materials, they refused to give him physical copies of the mail to read. *Id*. Instead, they stated that he would have to "release" his tablet to someone to fix, and in the meantime, they could tell him what each letter said, if he allowed them to read it. *Id*. On August 1, 2024, Plaintiff was finally able to see all of his mail on his tablet. *Id*.

3

On October 4, 2024, CO Thomas again refused to take a large envelope from Plaintiff that contained documents relating to *this* case, even though Plaintiff told him that that large envelope wouldn't fit in his mailbox. *Id*. at 10. Later that day, a different correctional officer agreed to take and mail the large envelope. *Id*. Plaintiff alleges that, on November 19, 2024, CO Johnston refused to make copies of legal filings and refused to submit a request for legal supplies in retaliation for grievances Plaintiff filed. *Id*.

On December 2, 2024, and December 6, 2024, CO Hethington opened Plaintiff's legal mail out of his presence and then refused to give it to him. *Id*. at 11. Instead, she placed the legal mail on his tablet. *Id*. Plaintiff alleges this conduct occurred in retaliation for the aforementioned complaints of corruption, racism, and grievances. *Id*. For relief, Plaintiff seeks injunctions to stop the retaliation and monetary damages. *Id*. at 12.

THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

1. **First Amendment: Retaliation**

To state a First Amendment claim for retaliation, Plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

4

Plaintiff alleges that he has filed many "grievances" and all Defendants are conspiring to "retaliate" against him. However, it is unclear when Plaintiff filed his alleged grievances; which specific individuals he complained about in those grievances; what specific conduct he complained about in those grievances; and whether those individuals knew about his grievances. Without these facts, the Court cannot reasonably infer that Plaintiff's grievances were at least a motivating factor in any of the defendants' decision to take allegedly retaliatory action. In addition, Plaintiff does not allege that he suffered any deprivation, such as receiving a conduct report, punishment, or any other adverse consequence, likely to deter First Amendment activity in the future. Plaintiff mainly complains about the amount of time and the manner in which jail staff process his mail. But a delay in processing mail is not the type of adverse consequence likely to "deter" First Amendment activity in the future. Therefore, Plaintiff fails to state a First Amendment retaliation claim.

2. **First Amendment: Denial of Mail**

"[P]risoners have protected First Amendment interests in both sending and receiving mail." *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). This right, however, "does not preclude prison officials from examining mail to ensure that it does not contain contraband." *Kaufman v. McCaughtry*, 419 F.3d 678, 685 (7th Cir. 2005). "Prison regulations or practices affecting a prisoner's receipt of non-legal mail . . . implicate First Amendment rights and must be 'reasonably related to legitimate penological interests[.]'" *Rowe*, 196 F.3d at 782 (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989)). Prison officials may, consistent with the First Amendment, open legal mail in the presence of the incarcerated person. *Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974). The Seventh Circuit defines "legal mail" as mail from a lawyer or marked as confidential and privileged. *Kaufman*, 419 F.3d at 686.

5

Plaintiff alleges that Case Manager Jordan and Case Manager Lauren tampered with his non-legal mail without penological justification in May 2023. He also alleges that Capt. Moore, CO Thomas, CO Hethington, CO Johnston, and Deputy Hunter have consistently and routinely opened his legal mail out of his presence or refused to send his legal mail at the Milwaukee County Jail since May 2023. Full development of the record may show a penological justification for examining his non-legal mail or may show that certain pieces of mail were not actually "legal mail" sent by a lawyer. But at this stage, the Court will allow Plaintiff to proceed on a First Amendment claim against Case Manager Jordan, Case Manager Lauren, Capt. Moore, CO Thomas, CO Hethington, CO Johnston, and Deputy Hunter in connection with his allegations that they tampered with his legal and non-legal mail at the Milwaukee County Jail.

**3. Fourteenth Amendment: Access to the Courts**

Prisoners have a due process right to access the courts. *Bounds v. Smith*, 430 U.S. 817, 825 (1977). To state an access-to-the-courts claim, Plaintiff must allege that (1) prison officials failed to help him prepare and file meaningful legal papers and (2) he lost a valid legal claim or defense because of the challenged conduct. *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009); *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006). A prisoner asserting a denial of access claim must allege an "actual injury" in the form of interference with a "nonfrivolous legal claim." *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). "That is, [the prisoner] must allege that some action by the prison has frustrated or is impeding an attempt to bring a nonfrivolous legal claim." *In re Maxy*, 674 F.3d 658, 661 (7th Cir. 2012).

Plaintiff alleges that all Defendants have been hindering his access to the courts due to the amount of time and the manner in which mail is processed at the jail. However, Plaintiff does not allege that he has lost any valid legal claim or defense as a result of the alleged conduct. The only

lawsuit he mentions—*this* lawsuit—is open and on-going with no adverse consequences. Plaintiff therefore has not alleged an actual injury; and he fails to state an access to the courts claim.

Finally, the Court will dismiss OLR Director Sullivan and Milwaukee County from the case. Plaintiff does not identify any policy or custom of Milwaukee County that violated his constitutional right. *Waters v. City of Chicago*, 580 F.3d 575, 581 (7th Cir. 2009). With respect to OLR Director Sullivan, Plaintiff appears to imply that he has a due process right to present evidence to the OLR, but OLR Director Sullivan "quickly" closed the case without looking at Plaintiff's evidence. The Court is not aware of any "liberty" or "property" interest that Plaintiff has in an OLR investigation. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007) (holding that there is no Fourteenth Amendment due process claim without a liberty or property interest). Therefore, the Court will dismiss OLR Director Sullivan and Milwaukee County from the case.

## MOTION TO APPOINT COUNSEL

On February 3, 2025, Plaintiff filed a motion to appoint counsel. Dkt. No. 13. He states that there his "no way" he can litigate this case on his own given all the retaliation and corruption at the jail. *Id*. He states the jail is "organized crime on the highest level." *Id*.

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). In exercising its discretion, the Court must consider two things: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (citing *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)). The Court may also consider the merits and what is at stake when deciding whether to allocate scarce pro

7

bono counsel resources. *Watts v. Kidman*, 42 F.4th 755, 765 (7th Cir. 2022). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)).

To satisfy the first prong, the Court must determine that a plaintiff made a good faith effort to hire counsel on his own. *Pickett v. Chicago Transit Auth.*, 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. Plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." *Eagan*, 987 F.3d at 682. When considering the second prong, the Court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." *Pennewell v. Parish*, 923 F.3d 486, 490 (7th Cir. 2019). The Court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." *Id.* This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." *Id.* at 490-91. The Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Id.* at 491.

As for the merits of the case and what is at stake, the Court considers the claims the inmate has asserted, the extent of damage or harm he claims to have sustained, and, to the extent it appears from the record, the evidence supporting the allegations. *Watts*, 42 F.4th at 766. At the same time, the Court must be careful in assessing the merits at the early stages of litigation and remain mindful of the fact that the plaintiff is not an attorney and may have difficulty communicating the facts giving rise to his claim and the extent of his injuries. *Id*.

For purposes of the current motion, the Court will assume that Plaintiff has made reasonable attempts to recruit counsel on his own. Dkt. No. 13-1. But it is far too early in the case to tell whether the case is too complex for him to adequately represent himself. The amended complaint has not yet been served; and the remaining defendants have not yet filed a responsive pleading. Until matters proceed, the Court is not in a position to determine whether the difficultly of the case exceeds Plaintiff's capacity to present it. To date, Plaintiff has shown sufficient competence in litigating his case. His amended complaint is clear and coherent. It describes what happened to him and the relief he seeks. He also showed some legal savvy in submitting an amended complaint that cured the Rule 8, 18, and 20 violations the Court identified in the original screening order. The Court does not have any concerns about Plaintiff's ability to represent himself at this point in the case. Therefore, the Court will deny Plaintiff's motion for counsel without prejudice.

## Conclusion

The Court finds that Plaintiff may proceed on a First Amendment claim against Case Manager Jordan, Case Manager Lauren, Capt. Moore, CO Thomas, CO Hethington, CO Johnston, and Deputy Hunter in connection with allegations that they tampered with his legal and non-legal mail at the Milwaukee County Jail.

**IT IS THEREFORE ORDERED** that OLR Director Sullivan and Milwaukee County are **DISMISSED** from the case.

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel (Dkt. No. 13) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between Milwaukee County and this Court, copies of Plaintiff's amended complaint and this order are being electronically sent today to Milwaukee County for service on Case Manager Jordan, Case Manager Lauren, Capt. Moore, CO Thomas, CO Hethington, CO Johnston, and Deputy Hunter.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between Milwaukee County and this Court, Case Manager Jordan, Case Manager Lauren, Capt. Moore, CO Thomas, CO Hethington, CO Johnston, and Deputy Hunter shall file a responsive pleading to the amended complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin this 2nd day of April, 2025.

William C. Griesbach
United States District Judge